IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| SCOTT ROSEBERRY,<br><br>                  Plaintiff,<br><br>vs.<br><br>MARTIN O'MALLEY,<br>Commissioner of Social Security,<br><br>                  Defendant. | Court No. 2:22-cv-00752-DBP<br><br><br>MEMORANDUM DECISION AND ORDER<br><br><br>Chief Magistrate Judge Dustin B. Pead |

Plaintiff, pursuant to 42 U.S.C. §§ 405(g) and 1381(c), seeks judicial review of the decision of the Commissioner of Social Security (Commissioner) denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act). After careful review of the entire record,[1] the parties' briefs,[2] and arguments presented at a hearing held on February 28, 2024, the undersigned AFFIRMS the Commissioner's final decision.

## I.    PROCEDURAL HISTORY

Plaintiff's applications for DIB and SSI under Titles II and XVI of the Act were ultimately denied by an Administrative Law Judge (ALJ) in a March 2022 decision.[3] The

---

[1] ECF No. 10, Certified Administrative Transcript (Tr.).
[2] ECF No. 11, Plaintiff's Opening Brief; ECF No. 20, Defendant's Answer Brief; ECF No. 21, Plaintiff's Reply Brief.
[3] Tr. 9-29.

1

Appeals Council denied Plaintiff's subsequent request for review, thereby rendering the ALJ's March 2022 decision the Commissioner's final administrative decision for purposes of judicial review.[4] This appeal followed and the Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1381(c).

## II.   FACTUAL BACKGROUND

Plaintiff completed high school and, from 1996 through November 2015, he worked full time in positions as a warehouse laborer and a casino security guard[5] In late 2020, Plaintiff filed the DIB and SSI applications at issue here.[6] Plaintiff alleges disability beginning in May 2019 due to degenerative disc disease of the lumbar spine and arthritis in the lumbar region.[7] Plaintiff and his attorney appeared at a March 2022 hearing before an ALJ. The ALJ subsequently issued a decision finding that, although Plaintiff had degenerative disc disease of the lumbar spine, he remained capable of performing a range of light exertional work.[8] As such, the ALJ concluded

---

[4] Tr. 1-6. *See* 20 C.F.R. § 404.981. All citations to the Code of Federal Regulations (C.F.R.) are to the 2022 edition of Part 404 of 20 C.F.R., which governs Title II claims. Parallel regulations governing Title XVI claim are substantively the same and can be found at Part 416 of 20 C.F.R.

[5] Tr. 37-38, 313-14.

[6] Tr. 12, 265-87. Because Plaintiff filed his applications after March 27, 2017, the ALJ applied a new set of regulations for evaluating medical evidence that differs substantially from prior regulations. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5,844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)).

[7] Tr. 12, 267, 312. Plaintiff also alleged depression and anxiety. However, in this appeal, Plaintiff raises no arguments in relation to any mental conditions or mental functional abilities. As such, the Commissioner's brief focused on Plaintiff's physical conditions and abilities.

[8] Tr. 15-23.

that Plaintiff was not disabled at any time from his alleged onset in May 2019 through the March 2022 decision date.[9]

## III. STANDARD OF REVIEW

As the Supreme Court recently reiterated, "[o]n judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'"[10] The threshold for evidentiary sufficiency under the substantial evidence standard is "not high."[11] Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] Under this standard, the Court may neither reweigh the evidence nor substitute its judgment for that of the ALJ.[13] The court's inquiry "as is usually true in determining the substantiality of evidence, is case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close."[14]

---

[9] In a prior DIB application, Plaintiff alleged disability beginning in November 2015, when he was 46 years old. Tr. 60, 266. In a March 2019 decision, an ALJ found that, while Plaintiff had the severe impairment of degenerative disc disease of the lumbar spine, he retained the ability to perform a range of medium exertional work. Tr. 63-72. The ALJ concluded that Plaintiff was not disabled at any time from his alleged onset date in November 2015 through the March 2019 decision date. That decision became final and binding and is not at issue here. Additionally, that time period is subject to the doctrine of res judicata. *See* 20 C.F.R. § 404.957(c)(1); *Gonzales v. Colvin*, 515 F. App'x 716, 720 (10th Cir. 2013) ("Res judicata may apply in a social security case when a previous determination is made about the claimant's rights 'on the same facts and on the same issue or issues, and this previous determination has become final by either administrative or judicial action.'" (quoting *Poppa v. Astrue*, 569 F.3d 1167, 1170 (10th Cir. 2009)).

[10] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)).
[11] *Biestek*, 139 S. Ct. at 1154.
[12] *Id.* (quotations and citations omitted).
[13] *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014).
[14] *Biestek*, 129 S. Ct. at 1157.

## IV. DISCUSSION

The ALJ issued a March 2022 decision that followed the regulatory five-step sequential evaluation in determining that Plaintiff was not disabled.[15] As relevant here, the ALJ found that Plaintiff had several severe impairments, but the record as a whole showed that he retained the residual functional capacity (RFC)[16] for a limited range of light work as defined at 20 C.F.R. § 404.1567(b). Specifically, the ALJ found Plaintiff could:

- lift 20 pounds occasionally and 10 pounds frequently;
- stand or walk about six hours total in an eight-hour workday with customary breaks;
- frequently climb ramps and stairs;
- never climb ladders, ropes, and scaffolds;
- frequently balance;
- occasionally stoop, kneel, crouch, and crawl;
- never be exposed to hazards such as unrestricted heights and dangerous moving machinery;
- occasionally be exposed to vibration;
- perform simple, unskilled work that was goal-oriented but not assembly-line paced; and
- frequently interact with co-workers, supervisors, and the public.[17]

---

[15] The adjudicator considers whether the claimant: (1) is working at the substantially gainful activity level; (2) has a severe impairment(s); (3) has a condition that satisfies the criteria of a per se disabling impairment (at Appendix 1); (4) retains the ability to perform past relevant work; and, if not, (5) can perform other work. 20 C.F.R. § 404.1520(a)(4).

[16] RFC represents the most a claimant can still do notwithstanding his functional limitations. 20 C.F.R. § 404.1545.

[17] Tr. 17.

The ALJ then relied on vocational expert testimony in finding that Plaintiff could perform work existing in significant numbers in the national economy, including the light, unskilled representative occupations of housekeeping cleaner, office helper, and photocopy machine operator.[18] Accordingly, the ALJ found Plaintiff was not disabled within the meaning of the Act.

In challenging the ALJ's decision, Plaintiff asserts that the ALJ erred in considering the prior administrative medical findings from the State agency physicians and in considering statements from his own care provider. For the reasons discussed below, the Court finds that the ALJ's decision is supported by substantial evidence and is AFFIRMED.

### A.  Substantial evidence supports the ALJ's determination that the prior administrative medical findings were only partially persuasive.

In May 2021, State agency physician William Blacklund, M.D., reviewed the record and found that, in an eight-hour workday, Plaintiff could lift-carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours; sit about six hours; and occasionally perform postural activities, such as kneeling, crouching, stooping, etc.[19] Dr. Blacklund also noted that Plaintiff "[a]lternate sitting with S/W [standing/walking] every 2 hours for 10 minutes".[20] In August 2021, a second state agency physician, Victoria Judd, M.D., reviewed the record and found that in an eight-hour workday, Plaintiff could lift-carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about six hours; sit about six hours; and perform

---

[18] Tr 23.
[19] Tr. 93-95.
[20] Tr. 93.

postural activities at least frequently.[21] Unlike Dr. Blacklund, Dr. Judd did not include any limitation for alternating sitting with standing/walking.

The ALJ found the findings of Drs. Blacklund and Judd were partly persuasive. In particular, the ALJ found Dr. Blacklund's sit/stand option was not persuasive, explaining that:

> the vague sit/stand option included in the initial determination is not supported by the explanation given and is inconsistent with other evidence, including the physical consultative exam [by Dr. Baum's] and opinion at Exhibit B8F as well as the treating source opinion [from Dr. Tingey] at Exhibit B13F.[22]

The ALJ also made an alternative finding, explaining that, "[i]n any case, [Dr. Blacklund's] sit/stand option could be accommodated by normal breaks."[23]

Plaintiff contends the ALJ did not cite any evidence contradictory to the sit/stand option set forth by Dr. Blacklund. The court is not persuaded by this argument. The ALJ explained that the sit/stand option was inconsistent with the September 2021 opinion of Plaintiff's own care provider.[24] The ALJ also found the sit/stand option was inconsistent with the July 2021 physical examination and opinion of the consultative examiner, Steven Baum, M.D. On examination, Dr. Baum observed that Plaintiff did not have an assistive device and exhibited a steady and symmetric gait.[25] Plaintiff had moderate tenderness to palpation of lumbar muscles on the right but exhibited full strength and full range of motion throughout; negative straight leg raising; symmetric and full reflexes; and no swelling or other deformities. Dr. Baum also reviewed some

---

[21] Tr. 146-47.
[22] Tr. 21.
[23] *Id.*
[24] *See id.* (referencing Tr. 1072).
[25] Tr. 751.

of Plaintiff's treatment records, including lumbar x-rays, a lumbar MRI, and a note from a pain management consultation.[26] Dr. Baum opined that Plaintiff did not need an assistive device and had no limitations with sitting, standing, or walking. The Court finds the ALJ's resolution of the conflicting medical evidence in this case is based on a reasonable interpretation of the evidence and the Court will not displace it.[27] Thus, substantial evidence supports the ALJ's findings and the ALJ did not err in rejecting Dr. Blacklund's sit/stand limitation.

The Court further notes that even including Dr. Blacklund's sit/stand limitation would not change the outcome of this case. The ALJ found in the alternative that, "[i]n any case, [Dr. Blacklund's] sit/stand option could be accommodated by normal breaks."[28] An ordinary workday contemplates an eight-hour workday "with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals."[29] "Persons who can adjust to any need to vary sitting and standing by doing so at breaks, lunch periods, etc., would still be able to perform a defined range of work."[30]

### B. Substantial evidence supports the ALJ's consideration of the statements from Plaintiff's own care provider.

Plaintiff contends that the ALJ erred in considering various statements from his own doctor, Jeffrey Tingey, D.O.[31] The court finds these arguments unpersuasive.

---

[26] Tr. 753.
[27] *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (the court will not displace the agency's choice between two conflicting views).
[28] Tr. 21.
[29] *See* Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *6.
[30] SSR 83-12, 1983 WL 31253, at *4.
[31] ECF No. 11 p. 11-12.

1.      **Statements dating during the previously adjudicated time period.**

Plaintiff argues that the ALJ erred with respect to "opinion" evidence from Dr. Tingey dating in July 2017 and November 2018.[32] At the outset, the court finds the July 2017 statement from Mr. Tingey is not opinion evidence.[33]

The regulations define "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in … [y]our ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . ."[34] The regulations further explain that statements on issues reserved to the Commissioner—such as statements about whether or not an individual is disabled or able to perform regular or continuing work—are inherently neither valuable nor persuasive, and the agency will not provide any analysis of how such statements were considered.[35]

In July 2017 Dr. Tingey completed a checkbox form indicating that Plaintiff was unable to work due to low back pain such that he was "unable to maintain a comfortable position for an extended period of time."[36] Dr. Tingey's statement that Plaintiff was unable to work is an issue reserved to the Commissioner and the agency need not provide any analysis on such evidence.[37] Further, the July 2017 form did not include any information concerning Plaintiff's ability to

---

[32] ECF No. 11 p. 11 (citing Tr. 1284 & 1221).
[33] Tr. 1284.
[34] 20 C.F.R. § 404.1513(2)(i).
[35] 20 C.F.R. § 404.1520b(c)(3).
[36] Tr. 1284.
[37] *See* 20 C.F.R. § 404.1520b(c)(3).

perform the physical demands of work activities. As found previously by this Court, evidence must meet all the regulatory requirements to qualify as a medical opinion.[38] Here, while Dr. Tingey's statement is from a medical source, it did not say what Plaintiff could still do despite his impairments and thus did not satisfy all the regulatory requirements.[39] The July 2017 statement is not opinion evidence within the meaning of the regulations.

In addition, both the July 2017 and November 2018 statements from Dr. Tingey are dated prior to the relevant time period at issue here. Both these statements arise from the previously adjudicated time period and are subject to the doctrine of *res judicata*. The prior ALJ decision explicitly addressed both statements.[40] Specifically, the ALJ explained that findings of disability and ability to perform past work are issues reserved for the Commissioner alone,[41] and went on to accord little weight to Dr. Tingey's statements.[42]

---

[38] *Staheli v. Kijakazi*, No. 1:20-CV-00159-JCB, 2021 WL 5495694, at *3 (D. Utah Nov. 23, 2021) (setting forth the requirements for a "medical opinion"), *aff'd sub no. Staheli v. Comm'r, SSA*, 84 F.4th 901 (10th Cir. 2023).

[39] *See* 20 C.F.R. § 404.1513(a)(2).

[40] Tr. 69.

[41] 20 C.F.R. § 404.1527(d) (addressing medical source opinions on issues reserved to the Commissioner).

[42] The ALJ set forth specific reasons in that decision for the weight given to Dr. Tingey's statements:
1) imaging showed only slight/mild degenerative changes in Plaintiff's lumbar spine;
2) physical examinations showed some reduced range of motion but normal strength, intact sensation, equal reflexes, and a normal gait without the use of an assistive device;
3) Plaintiff reported his medications were working well and he was able to tolerate his pain with medications; and
4) treating providers rarely observed Plaintiff to be in more than mild distress.

Tr. 69. *See* 20 C.F.R. § 404.1527(c) (outlined factors used in weighing medical opinions).

In sum, Dr. Tingey's July 2017 and November 2018 statements were previously adjudicated, and that decision is final.

### 2.     Statements dating from the relevant time period.

Plaintiff challenges the ALJ's consideration of an October 2019 statement from Dr. Tingey.[43]  Dr. Tingey's October 2019 statement is not opinion evidence within the meaning of the regulations.  Further, substantial evidence supports the ALJ's consideration of Dr. Tingey's September 2021 statement,[44] which Plaintiff fails to challenge or consider in his arguments.

In October 2019, Dr. Tingey completed a checkbox questionnaire with respect to "any specific transportation restrictions for patients due to medical conditions."[45]  Dr. Tingey had twice completed the form at Plaintiff's request because Plaintiff wanted to obtain medical transportation to appointments.  The first time Dr. Tingey completed the form, he indicated that Plaintiff had the physical ability to ride a bus and to use paratransit.[46]  Plaintiff contacted Dr. Tingey and asked him to complete another form, explaining that "when the paperwork is filled out wrong [he] is not able to get the transportation needed to any of his appts."[47]  Dr. Tingey indicated he believed Plaintiff had enough mobility to get out to the curb and use paratransit. When Dr. Tingey completed the form a second time in October 2019, he indicated that "if there is extreme weather, i.e. snow/ice, [Plaintiff] may have difficulty," but he nonetheless

---

[43]  ECF No. 11 p. 11-12 (citing Tr. 1075 & 1127).
[44] Tr. 21 (citing Tr. 1072).
[45] Tr. 1074.
[46] Tr. 1167-68.
[47] Tr. 1128.

recommended Plaintiff use paratransit. In the form, Dr. Tingey also checked boxes indicating that Plaintiff used a cane and could only walk 300 feet unaided.[48]

As noted above, the regulations define a medical opinion as a statement from a medical source about what an individual can still do despite his impairments and whether the individual has one or more impairment-related limitations or restrictions in his "ability to perform physical demands of work activities."[49] Here the record reflects that Dr. Tingey completed the October 2019 form for the purposes of assisting Plaintiff in obtaining transportation to medical appointments. The form solely asked about "any specific transportation restrictions for patients due to medical conditions." Given this context, the Court finds that the October 2019 was not opinion evidence.

In any event, following an examination in June 2021, Dr. Baum opined that Plaintiff had no need for any assistive devices.[50] As explained above, substantial evidence supports the ALJ's determination that the opinion of Dr. Baum was persuasive. Additionally, more recent evidence from Dr. Tingey also supports the ALJ's finding that Plaintiff did not need an assistive device and was capable of the standing and walking required by light exertional work.

Specifically, in September 2021, Dr. Tingey completed a Department of Workforce Services form addressing Plaintiff's ability to perform work. Dr. Tingey indicated that Plaintiff "is not disabled and unable to work," but explained that "he should limit bending, lifting,

---

[48] Tr. 1075.
[49] 20 C.F.R. § 404.1513(2)(i).
[50] Tr. 754.

twisting, but can perform other functions."[51]  The ALJ found the first portion of this statement was inherently neither valuable nor persuasive in accordance with the regulations.[52]  The ALJ, however, found the functional limitations opined by Dr. Tingey in the September 2021 form were persuasive.  The ALJ explained that Dr. Tingey's opined limitations were supported by his review of the imagining studies and treatment notes, his mostly normal examination findings, and the conservative course of treatment he prescribed.  The ALJ also noted Dr. Tingey's opined limitations were consistent with the other evidence of record, including the physical examination and opinion of consultative examiner Dr. Baum.[53]  Thus, ALJ's determination that Dr. Tingey's opined limitations were persuasive is supported by substantial evidence of record.

### V.   CONCLUSION

Because the ALJ's decision is supported by substantial evidence and legally sound, it is AFFIRMED.  Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296-304 (1993).

DATED this 25 day of March, 2024.

Dustin B. Pead
United States Magistrate Judge

---

[51] Tr. 1072.
[52] *See* 20 C.F.R. § 404.1520b(c)(3).
[53] *See* 20 C.F.R. § 404.1520c(c)(2) (consistency factor).